[No. 200,578-1. En Banc.]
Argued June 23, 2009.    Decided December 24, 2009.

*In the Matter of the Disciplinary Proceeding Against*
FREDRIC SANAI, *an Attorney at Law.*

*Shawn T. Newman* (*Cyrus Sanai*, of counsel), for the attorney.

*Linda B. Eide*, for the Bar Association.

¶1 MADSEN, J. — In April 2007, a hearing officer recommended Fredric Sanai be disbarred from the practice of law

in Washington. The disbarment recommendation came after the hearing officer denied Fredric's request for a stay of the proceedings and instead conducted the three-day hearing without Fredric's participation or presence.[1] Fredric claims the hearing officer abused his discretion by denying his request for a continuance and further, that the denial violated his rights to due process. On appeal, the Washington State Bar Association (WSBA) voted unanimously to adopt the hearing officer's recommendation of disbarment. We now reverse WSBA's decision and remand for a new hearing.

## FACTS

¶2 Fredric Sanai started his legal career in Oregon and is currently the assistant county counsel in Yamhill County, Oregon. He was admitted to practice law in the state of Washington on June 13, 2002. He sought admission in order to assist his mother, Viveca Sanai, with her divorce from his father, Sassan Sanai. Fredric's brother, Cyrus Sanai, also assisted in the divorce litigation. The divorce proceedings were extremely acrimonious.

¶3 In July 2004, WSBA filed a complaint against Fredric. The original complaint contained eight counts, all stemming from litigation and filings related to Viveca and Sassan's divorce. The counts included allegations of frivolous litigation, knowing and willing disobedience of court orders, and conduct prejudicial to the administration of justice.[2]

¶4 A hearing set for March 2005 was continued because of developments in the underlying divorce litigation that

---

[1] For convenience and clarity, different members of the Sanai family will be referred to by their first names throughout this opinion.

[2] At the heart of many of Fredric's numerous filings in Washington state courts, California state courts, and various federal courts is his disagreement with the appointment of his father's accountant, Philip Maxeiner, as a "special master," imbued with the power and authority of a receiver, in his parent's divorce proceedings. Opening Br. on Appeal at 9-10; Clerk's Papers at 948. Maxeiner had also been a witness in the divorce proceedings.

gave rise to the complaints against Fredric. Case status conferences were held about every six months until October 2006, when another hearing date was rescheduled after counsel withdrew for health reasons. A final April 16, 2007, hearing date was set.

¶5 On April 6, 2007, the hearing officer, Joseph M. Mano, Jr., convened a pretrial conference. At that time, Fredric made no mention of inability to attend the scheduled hearing. On Friday, April 13, 2007, Fredric faxed a note and a signed prescription sheet to both the hearing officer and WSBA counsel. The note stated:

> Dear Mr. Mano and Ms. Eide, I am afraid I am unable to appear at the proceedings on April 16, 2007 due to serious medical reasons (physician's note above). I regret any inconvenience this may cause, but I must request a continuance.

Clerk's Papers (CP) at 1252. Later that afternoon the hearing officer denied his request, stating the note was "virtually unreadable" and the medical reasons "are not specified or documented." *Id.* at 1253. Fredric supplemented the note with a typed, signed statement from the doctor the following Monday.

¶6 The statement from Colin McDonough, MD, signed and dated April 16, 2007, read:

> 1. I am a physician licensed in Oregon specializing in Internal Medicine.
>
> 2. Last month my patient Fredric Sanai called for an appointment. As I was going to be unavailable until April 2, he made an appointment for that day. On March 27 he saw Dr. Huey Meeker, who was covering for me. I saw Mr. Sanai on April 2, 2007, and requested he return for a subsequent appointment.
>
> 3. On April 13, 2007 Mr. Sanai returned for an appointment with me, with continuing symptoms of severe hypertension. I took his blood pressure which was dangerously high. I enquired of Mr. Sanai if he was under any stress. He stated that he had a trial beginning on Monday, April 16. I instructed him that under no circumstances could he participate in such trial or

other highly stressful activity without incurring a severe risk to his health. I wrote a prescription slip note to this effect, dated April 13.

4. I have put Mr. Sanai on anti-hypertension medication. These medications may take approximately 5 weeks to stabilize his hypertension. Until such time has elapsed and I have had the opportunity to examine him, he cannot undertake any highly stressful activities such as a trial without incurring severe risk to his health.

5. I note that on his April 13, 2007 visit, Mr. Sanai did not mention any upcoming stressful activity until I made specific inquiry, and the medical instruction to refrain from participation in any trial was made by me. I declare, under penalty of perjury under the law of the United States, that all matters of fact stated in the foregoing are true and correct.

*Id.* at 1257-58. At Fredric's show cause hearing in this case, WSBA affirmatively stated it was not arguing that the letter, or Fredric's symptoms, were faked. Nor did it assert that Fredric was lying about his condition.

¶7  On the morning of April 17, 2007, Fredric testified by telephone about his dangerously elevated blood pressure. Fredric stated he had not been in his office recently because of his health issues, that he had drafted Dr. McDonough's statement "based on statements that he made to [Fredric]," that he didn't know why the declaration wasn't on letterhead, and that he had missed numerous days of work because of his hypertension. Tr. of Proceedings at 232-34. Fredric also testified that his blood pressure had been 180/130 or 200/140 at his March 27 appointment with Dr. Meeker and that he was currently taking "Benicar, Olmesartan, Metoxomil [sic], and Triamt, HCTZ 37, Maxzide, 25 milligrams."[3] *Id.* at 234-35. Fredric further testified he did not remember what his blood pressure was on either of his April visits. Fredric stated that he obtained the signed statement from Dr. McDonough on Monday,

___

[3] Benicar is a brand name for olmesartan medoxomil. Triamt HCTZ 37.5 is a 25 milligram blood pressure pill. All of the medications Fredric named are for high blood pressure.

April 16, because he realized late on Friday, April 13, that the copy of the prescription note he faxed to the hearing officer might have been difficult to read. *Id.* at 245.

¶8 After Fredric's testimony, the hearing officer denied his request for a continuance, stating:

> The letter from Dr. McDonough and the communication from Mr. Sanai frankly does [sic] not have the ring of truth, in my judgment. There is no indication in that letter as to what the blood pressure is; and as I understand it, and as Mr. Sanai has indicated, the major symptom of hypertension is high blood pressure. I find it inconceivable that Mr. Sanai would not remember the blood pressure that was taken twice from him on Friday, April 13th in order to be able to testify as to what that is here today.

CP at 246. He went on to note that the doctor's letter was not on letterhead and carried a "rather strange certification" when it said, " 'I declare under penalty of perjury.' " *Id.* ("That's not a certification that I'm familiar with and certainly different from the one that is normally used in the state of Washington."). He also added that the letter failed to specify Fredric's blood pressure or what medications were prescribed. After denying the continuance, the hearing officer discontinued the phone call with Fredric and proceeded with the disciplinary hearing. *Id.* at 247.

## ANALYSIS

¶9 Fredric argues the hearing officer's failure to grant him a continuance violated "[o]ne of the three fundamental components of due process," the "opportunity to be heard." Opening Br. on Appeal at 26-27 ("Holding a proceeding when a party is incapacitated is a denial of the right to be heard."). WSBA does not address Fredric's constitutional argument and instead insists that this case "turns on the appropriate standard of review." Answering Br. of WSBA at 1. WSBA urges that the hearing officer did not abuse his discretion when he refused to find Fredric's testimony or Dr. McDonough's note credible. *Id.* at 44, 49.

■■ ¶10 Under ELC 10.12(f), "[e]ither party may move for a continuance of the hearing date. The hearing officer has discretion to grant the motion for good cause shown." Decisions to grant or deny a continuance are reviewed for abuse of discretion. *In re Discipline of Whitney*, 155 Wn.2d 451, 465, 120 P.3d 550 (2005).

¶11 In exercising discretion to grant a continuance, the hearing officer may consider the necessity of prompt disposition of the litigation; "the needs of the moving party; the possible prejudice to the adverse party; the prior history of the litigation . . . ; any conditions imposed in the continuances previously granted; and any other matters that have a material bearing" on the exercise of the discretion vested in the hearing officer. *Trummel v. Mitchell*, 156 Wn.2d 653, 670-71, 131 P.3d 305 (2006). A hearing officer abuses her discretion when her decision is " 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

■ ¶12 "[T]he right to practice law, once acquired, is a valuable right, and . . . an attorney cannot be deprived of that right except by the judgment of a court of competent jurisdiction, after notice and full opportunity to be heard in his own defense." *In re Discipline of Metzenbaum*, 22 Wn.2d 75, 79, 154 P.2d 602 (1944). In *Metzenbaum,* we held that a disbarment trial should have been continued at defendant attorney's request so that "he [w]ould not be deprived of his rights by a court of law without giving him full opportunity to present his defense" and "hear the testimony given against him by witnesses." *Id*. at 81.

¶13 The facts in *Metzenbaum* are similar to those in the case at bar: Metzenbaum was residing out of state when he was served with a complaint from WSBA. Over the course of the proceedings he was granted three continuances: once "because of respondent's financial inability to come to Seattle from Bakersfield, California," the second time because his son, who was in the armed services, was expected

home on a furlough, and a third time "because of respondent's weakened physical condition due to a duodenal ulcer." *Id.* at 76-77. The hearing officer granted the medical continuance on the strength of a certificate from the attorney's doctor in California that stated, "[R]espondent's condition was such that the projected trip to Seattle would be inimical to his health." *Id.* at 77. Metzenbaum then applied for a fourth continuance, submitting a second certificate from his doctor stating that "his condition was still such that any lengthy travel, followed by the strain of a legal contest of the nature involved in the pending cause, would likely prove dangerous to respondent's health." *Id.* The request was denied. The committee appointed local counsel for the purposes of defending Metzenbaum and held his disciplinary hearing without him.

¶14 On review, we held an attorney is entitled to an opportunity to be heard before she is disbarred:

> [W]e do not believe that the respondent has been given that full opportunity to be heard in his own defense which the spirit of the law in such cases contemplates. It is true that, in the early stages of the case, the trial committee was quite lenient with the respondent in the matter of postponements and in fact granted two of the three continuances upon grounds which it was not compelled to recognize as being conclusive, but which, in the desire to be eminently fair, it did recognize and accept as being satisfactory. That fact, however, will not afford sufficient reason for refusing a further continuance when good cause is shown therefor.

*Id.* at 80.

¶15 WSBA does not discuss the potential constitutional impact of disbarring Fredric through a trial held in his absence. Instead, WSBA argues that applying the *Trummel* factors mentioned above, the hearing officer did not abuse his discretion in denying the continuance. Answering Br. of WSBA at 37 (quoting *Trummel*, 156 Wn.2d at 670-71). Unlike here, *Trummel* involved a request for continuance of a harassment suit so that Trummel could better prepare a new attorney and possibly cross-examine witnesses, though

he had previously declined to present any testimony. *Trummel*, 156 Wn.2d at 670-71. Trummel's need for the continuance and the "material bearing" of a denial of a continuance on the constitutionality of Trummel's conviction of civil harassment are distinct from Fredric's need. *Id.* at 670. Fredric requested a continuance so that he could be heard in his own defense. *Metzenbaum*, 22 Wn.2d at 79. Fredric's right to be present at his disbarment proceeding cannot be easily dismissed. Even under the *Trummel* factors, prompt disposition and the grant of prior continuances hold little weight against the possibility of disbarring Fredric in absentia.

¶16 *Trummel* is further distinguished by the antiharassment statute involved in that case, which requires a hearing to be held within 14 days of the court's initial order. RCW 10.14.070. The statutory time requirement heightened the need for prompt disposition of the litigation in *Trummel*. By contrast, nothing in the ELC requires that the hearing occur within a specific time frame.

¶17 WSBA further argues we must give weight to the hearing officer's decision because it addresses the " 'credibility and veracity of the witnesses.' " Answering Br. of WSBA at 43 (quoting *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 717, 72 P.3d 173 (2003)). Our deference to a hearing officer's judgment of witness credibility was articulated in *In re Discipline of Little*, 40 Wn.2d 421, 427, 244 P.2d 255 (1952):

> The trial committee, *before whom the witnesses appeared*, was in a better position to judge their veracity and candor, and evaluate their testimony, than is either the board of governors or this court.

(Emphasis added.) One reason we defer to a hearing officer's findings is because she sees the witnesses appear before her. In Fredric's case, the hearing officer appears to be judging the credibility of the Friday note on the prescription pad, the Monday letter from Dr. McDonough, as well as

Fredric's credibility via telephone. Because the credibility assessment involves documents and a witness testifying by telephone, the hearing officer is not necessarily in a "better position to judge their veracity." *Id.*

¶18 While a hearing officer's discretionary decisions are entitled to great weight, this must be weighed against the right of a lawyer to be present to defend. In this case, Fredric provided a doctor's note and detailed testimony as to his medical condition. Because "[a]ttorney disciplinary hearings must meet the requirements of due process," we hold that the hearing officer abused his discretion by refusing to grant Fredric a continuance based on his medical condition so that he could attend and participate in the proceedings. *In re Disciplinary Proceeding Against Meade*, 103 Wn.2d 374, 381, 693 P.2d 713 (1985) (citing *In re Ruffalo*, 390 U.S. 544, 550, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968); *Metzenbaum*, 22 Wn.2d at 79).

¶19 Fredric has also asked that we review the hearing officer's decisions regarding certain discovery motions. Although we remand for a new hearing, we recognize that significant work has already been done by both parties in this case. In an effort to provide speedy justice, we address the parts of Fredric's petition regarding the discovery motions.

¶20 On February 2, 2007, Fredric filed a "motion for order allowing subpoenas" of three Ninth Circuit judges, Judge Alex Kozinski, Judge Johnnie Rawlinson, and Senior Judge William Canby, Jr. CP at 945. Fredric alleges that the testimony of these three judges will substantiate his claim that the "judicial practice [of appointing] a special purpose officer who has financial relationship with one side to the dispute," such as the appointment of Philip Maxeiner, is a corrupt practice and violative of due process. CP at 948-50.

¶21 Substantiating this claim and obtaining the testimony of these judges will, Fredric argues, "demonstrate core elements of Fredric's defense: that his actions were entirely justified at law; that the legal decisions which came against him had no merit; and that the actual motivating

force behind the negative judicial decisions was the desire of the judges to avoid having to acknowledge the obvious fact that the appointment . . . is a gross violation of fundamental due process rights." CP at 951. Fredric argues, "The three judges are being asked to do nothing more than explain their views of the case and to justify their reasoning." CP at 951.

¶22 The hearing officer denied Fredric's request for subpoenas of the judges because the request came too late in the time period for discovery and because the requested depositions ask for information regarding the judges' mental processes and, as such, cannot be reasonably calculated to lead to discoverable information. CP at 995-96.

■ ¶23 We review pretrial discovery orders for a manifest abuse of discretion. *See generally Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

■ ■ ¶24 Evidence rules and the code of judicial conduct "reflect a presumption against judicial testimony, which presumption warrants heightened scrutiny when a party seeks to require a judge to testify." *United States v. Roth*, 332 F. Supp. 2d 565, 567 (S.D.N.Y. 2004). " 'Judges are under no obligation to divulge the reasons that motivated them in their official acts; the mental processes employed in formulating the decision may not be probed.' " *Id.* (quoting *United States v. Cross*, 516 F. Supp. 700, 707 (M.D. Ga. 1981)). Further, the Eighth Circuit has held it is not an abuse of discretion for a district court to refuse to subpoena judges about the underlying litigation of an attorney facing disciplinary sanctions. *In re Disciplinary Matter of Fletcher*, 424 F.3d 783, 794-95 (8th Cir. 2005), *cert. denied,* 547 U.S. 1071 (2006). Indeed, subpoenas asking judges to justify their reasoning are clearly disfavored, if not outright barred by case law. Additionally, the judges were not involved in the litigation for which Fredric is being sanctioned, they are not even located in the state of Washington, and the relevance of their testimony is doubtful.

¶25 Further, the hearing officer ordered all depositions and discovery to be completed by February 8, 2007. Fredric filed his request for the depositions of judges on February 2, 2007. CP at 982. It was not an abuse of discretion for the hearing officer to deny Fredric's request because there was not enough time to complete the depositions nor would the depositions likely have led to relevant testimony.

¶26 In addition to the subpoenas, Fredric filed 72 requests for admission. Opening Br. on Appeal, Ex. 5. The hearing officer granted WSBA's motion for a protective order, effectively quashing 55 of Fredric's requests. The hearing officer found that the requests sought legal conclusions, were irrelevant, asked for subjective reasoning about which WSBA had no knowledge, or were unduly burdensome. *Id.*, Ex. 6.

¶27 We review a hearing officer's grant of a protective order for abuse of discretion. *Fisons*, 122 Wn.2d at 339; *Shields v. Morgan Fin., Inc.*, 130 Wn. App. 750, 759, 125 P.3d 164 (2005).

¶28 Requests for admission may "relate to any matter not privileged that is relevant to the subject matter of the pending action or appears reasonably calculated to lead to the discovery of admissible evidence." 14 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 17.2, at 475 (1st ed. 2003). The purpose of requests for admission is to eliminate matters over which there is no dispute, not force opposing parties to admit contested issues. 14 TEGLAND, *supra*, § 17.5, at 476. CR 36(a)[4] specifically authorizes admissions "that relate to statements or opinions of fact or of the application of law to fact." "As an alternative to making objections to individual requests for admission, the responding party may make a motion for a protective order under CR 26(c)." 14 TEGLAND, *supra*, § 17.13, at 481.

¶29 Fredric argues that the hearing officer's order of protection "completely relieved the WSBA from having to

---

[4] The civil rules "serve as guidance in proceedings under [the Rules for Enforcement of Lawyer Conduct] and, where indicated, apply directly." ELC 10.1(a).

make any response at all." Opening Br. on Appeal at 30. However, WSBA is not required to proffer substantive responses to each request and was within its rights when it sought a protective order. CR 26(c). Additionally, Fredric's requests for admission were irrelevant and often sought legal conclusions. The requests ranged from "[a]ny order which violates a litigant's fundamental due process rights is void" to "[t]he Washington State Supreme Court punished Viveca Sanai for filing a petition for review of the Court of Appeal's validation of Philip Maxeiner's appointment as a judicial referee by imposing fine payable to the Supreme Court." Opening Br. on Appeal, Ex. 5 (Requests for Admission 13, 27). Under these circumstances, the hearing officer did not abuse his discretion when he granted WSBA's motion for a protective order.

¶30 Fredric has also asked that we take up the issue of the hearing officer's refusal to admit his brother, Cyrus Sanai, to appear pro hac vice. Because we hold that the hearing officer abused his discretion when he denied Fredric's motion to continue, Fredric will be given a new opportunity to defend himself and the hearing officer can revisit the issue of Cyrus' eligibility for pro hac vice admission at that time.

¶31 Fredric last asks that we remand this matter to a "new Hearings Officer." Opening Br. on Appeal at 36. We decline this invitation to interfere with the procedures on remand, noting that the ELCs provide adequate protections to both parties.

¶32 The matter is remanded for a new hearing on the merits.

ALEXANDER, C.J., and SANDERS, OWENS, and STEPHENS, JJ., concur.

¶33 CHAMBERS, J. (dissenting) — As then-Judge Benjamin N. Cardozo observed:

"Membership in the bar is a privilege burdened with conditions." The appellant was received into that ancient fellowship

for something more than private gain. He became an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice. His co-operation with the court was due whenever justice would be imperilled if co-operation was withheld.

*People ex rel. Karlin v. Culkin,* 248 N.Y. 465, 470-71, 162 N.E. 487 (1928) (quoting *In re Rouss,* 221 N.Y. 81, 84, 116 N.E. 782 (1917)). Fredric Sanai has egregiously failed to act as an officer of the court. Despite repeated sanctions, he has not improved his conduct. He does not deny this; he has not even attempted to challenge the hearing examiner's extensive findings of fact or conclusions of law on his misdeeds, making them verities on appeal. *See In re Disciplinary Proceeding Against Carmick,* 146 Wn.2d 582, 594, 48 P.3d 311 (2002) (citing *In re Disciplinary Proceeding Against Curran,* 115 Wn.2d 747, 759, 801 P.2d 962 (1990)). Instead, he attempts to undercut the legitimacy of the process itself. Because he has not shown that the hearing examiner abused his discretion by denying yet another continuance, by denying admission of Fredric's brother and confederate pro hac vice, by declining to allow judges to be subpoenaed, and by refusing to order the Washington State Bar Association to admit that judges who ruled against him were corrupt, I respectfully dissent.

¶34 Viewed in isolation, I would have sympathy for Fredric's plea that his health prevented his appearance at his disciplinary proceeding and that he should be given another chance. Viewed in context, the hearing officer was fully justified in denying another frivolous motion brought only for the purpose of delay. This was Fredric's third request for a continuance on a hearing that had already been delayed two years. Fredric's attempt to delay was not limited to his own discipline case; the record (which the hearing examiner was well aware of when he denied the motion for a continuance) establishes a long standing pattern of delay through myriad tactics, including the filing of frivolous motions for reconsideration and appeal, failing to properly serve documents, refusing to appear for deposi-

tions, refusing to produce documents pursuant to orders, and numerous other excuses for his or his client's failure to comply with rules and orders of the courts. These excuses have included automobile collisions, office moves, press of existing motions, a sick mother, and the birth of a child.

¶35 Any one of these excuses might deserve judicial sympathy. But Fredric has an unprecedented record of engaging in abusive and vexatious practices by filing baseless lawsuits and endless motions and appeals (often in direct violation of court orders) in courts up and down the West Coast. As summed up by Judge Thomas S. Zilly of the United States District Court for the Western District of Washington at Seattle:

> Plaintiffs' conduct in this litigation has been an indescribable abuse of legal process, unlike anything this Judge has experienced in more than 17 years on the bench and 26 years in private practice: outrageous, disrespectful, and in bad faith. Plaintiffs have employed the most abusive and obstructive litigation tactics this Court has ever encountered, all of which are directed at events and persons surrounding the divorce of Sassan and Viveca Sanai, including parties, lawyers, and even judges. Plaintiffs have filed scores of frivolous pleadings, forcing baseless and expensive litigation. The docket in this case approaches 700 filings, a testament to the Plaintiffs' dogged pursuit of a divorce long past.

Ex. 252, at 2 (footnotes omitted); Findings of Fact (FOF) 141. Judge Zilly's comments are echoed by Los Angeles County Superior Court Judge Elizabeth A. Grimes:

> "Plaintiff has proliferated needless, baseless pleadings that now occupy about 15 volumes of Superior Court files, not to mention the numerous briefs submitted in the course of the forays into the Court of Appeals and attempts to get before the Supreme Court, and not one pleading appears to have had substantial merit. The genesis of this lawsuit, and the unwarranted grief and expense it has spawned, are an outrage."

Ex. 252, at 2 n.1 (quoting *Sanai v. U.D. Registry, Inc.*, No. BC235671, 2005 WL 361327, at *15 n.36 (L.A. County Super. Ct. Feb. 16, 2005)). This extraordinarily sad abuse of

our judicial system, unprecedented in the annals of the Washington State Bar Association, appears to be precipitated by Fredric's misguided attempt to assist his mother, Viveca Sanai, against his father, Sassan Sanai.

¶36 Fredric obtained his license to practice law in Washington so that he could represent his mother. His brother, Cyrus Sanai, is also a lawyer and has also represented Viveca. While only Fredric's conduct is before us, Fredric and Cyrus have often worked together even when instructed not to do so. As Judge Joseph A. Thibodeau of the Snohomish County Superior Court observed, "[A]lthough Cyrus and Fred[ ]ric have never been permitted to be part of this particular case, and that ruling has been upheld in a number of appellate courts, . . . they're, in essence, acting in concert with each other." Ex. 62, at 16; FOF 70. In an unchallenged finding of fact, the hearing examiner noted that Judge Thibodeau found that Fredric and his brother Cyrus were acting in bad faith.

¶37 Fredric argues that he was denied counsel because the hearing examiner would not allow his brother Cyrus to appear pro hac vice. A motion for pro hac vice admission should be granted only upon "(1) reasonable assurance that the attorney is competent and will conduct himself in an ethical and respectful manner in the trial of the case, and (2) reasonable assurance that local rules of practice and procedure will be followed." *Hahn v. Boeing Co.*, 95 Wn.2d 28, 34, 621 P.2d 1263 (1980). The record amply justifies the hearing examiner's conclusion that neither concern was satisfied.

¶38 While it is not before us, as he has not challenged the hearing examiner's findings and conclusions, the record amply supports disbarment. Much of Fredric's misconduct appears to arise from his efforts to frustrate the distribution and sale of property pursuant to his parents' divorce. He has attempted to frustrate postdissolution proceedings by intentionally and willfully violating rules and court orders, resulting in an astounding number of sanctions. In an attempt to prevent the sale of a lot formerly owned by his

parents, Fredric repeatedly filed baseless lis pendens in successive lawsuits in different counties. On June 13, 2001, Judge Thibodeau found that Viveca's conduct was intended to delay and frustrate the court's ruling. He imposed a $10,000 sanction against Viveca for attorney fees. He then imposed $1,000 in terms against Viveca for Fredric's having brought a frivolous protective order and sanctions motion. On August 11, 2003, Judge Thibodeau held Viveca in contempt and imposed $5,000 in sanctions for continuing to obstruct the vacant lot sale and for forum shopping by filing an identical lawsuit in King County Superior Court. Although the contempt order was against Viveca, it was Fredric who signed and filed the King County case. On October 1, 2003, Judge Zilly imposed a $3,400 attorney fee sanction against Fredric and Viveca, as well as $2,500 in sanctions to be paid to the court for violating that court's order regarding the filing of lis pendens. This is in addition to $2,500 in fees Judge Thibodeau had assessed against Viveca for pleadings filed by Fredric the previous year.

¶39 There was also litigation over the family home once owned by Sassan and Viveca. On December 16, 2003, Snohomish County Superior Court Judge Thomas J. Wynne sanctioned Fredric and Viveca jointly and severally $13,071.22 in attorney fees and $2,500.00 to the court for forum shopping.

¶40 In the meantime, Fredric proceeded to represent Viveca in appeal of the main dissolution. The Court of Appeals, stating, "Viveca brought numerous motions before this court that were inappropriate, untimely, and unduly repetitive," sanctioned Viveca $10,000. *In re Marriage of Sanai*, noted at 119 Wn. App. 1053, 2003 WL 22995693, at *7, 2003 Wash. App. LEXIS 3028, at *19-20. Fredric, on behalf of Viveca, continued to file numerous frivolous motions on appeal from the dissolution in the state Supreme Court, resulting in this court's imposing $1,000 in sanctions against Fredric and Viveca jointly and severally on September 5, 2003, and again on November 5, 2004, sanctioned Viveca $4,000 for Fredric's frivolous filings and delays.

¶41 On behalf of Viveca and others, Fredric and Cyrus filed multiple complaints alleging wiretap violations by Sassan in state and federal courts in Washington and California. All of these claims were dismissed as baseless. In the wiretap claims, they sought over $9 million in damages and, based upon that claim for damages, attempted to get prejudgment injunctive relief to enjoin the sale of the very same property upon which they had been filing baseless lis pendens. Judge Zilly, among other things, observed that "Fredric Sanai's failure to properly serve the subpoena was willful and in bad faith" and noted that the plaintiffs had, among them, already been sanctioned around $130,000 in both federal and state courts. Ex. 252, at 5, 14. Judge Zilly stated, "However, Plaintiffs persist in their misconduct. Plaintiffs' conduct shows that they will not respond to sanctions. Clearly no other sanction the Court might impose, except dismissal itself, would be effective in remedying this misconduct." Ex. 252, at 14. On November 4, 2005, the case was dismissed and Viveca and Fredric were sanctioned a total of $273,437.

¶42 In another unchallenged finding of fact, the disciplinary board found that Fredric and Cyrus (among others) sued their father in federal and state courts for allegedly wiretapping their calls. Initially, they asked for $1 million in damages; that ballooned to $16 million after the case had been dismissed or transferred multiple times. Fredric and Cyrus used that suit as a basis to file lis pendens on their father's property, even after being told in no uncertain terms by Judge Zilly that they were not to do so. FOF 103 (" 'Each of the plaintiffs herein shall cease and desist from taking any further action whatsoever to delay or obstruct the sale of the aforesaid real property.' " (quoting Ex. 207)). Merely five days later, Fredric filed another lis pendens. In ordering contempt sanctions, Judge Zilly wrote that Fredric and Cyrus " 'have made a mockery and are making a mockery of the legal system.' " FOF 109 (quoting Ex. 218, at 16).

¶43 Finally, in a federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, claim in

federal court, Fredric, among others, on March 21, 2007, was sanctioned $14,041.50 in attorney fees payable to Ms. Mary McCullough. Judge Zilly explained, "Plaintiffs' purpose in bringing the ERISA claims in this Court was to prolong the state court divorce proceedings in a different forum, and to punish and harass Ms. McCullough for her assistance of Defendant Sassan Sanai. Plaintiffs brought the ERISA claims in bad faith, without any reasonable basis in law or fact." Ex. 272A at 6.

¶44 Not only was Fredric's behavior properly sanctionable, it was a violation of RPC 3.1 (frivolous filings), RPC 3.2 (delaying litigation), RPC 4.4 (embarrassing or burdening another), RPC 8.4(a) (using another to violate the RPCs), and RPC 8.4(d) (conduct prejudicial to the administration of justice), among other canons of professional conduct. "Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." ABA, STANDARDS FOR IMPOSING LAWYER SANCTIONS std. 7.1 (1991 & Supp. 1992). Beyond a doubt, Fredric acted knowingly. There are many aggravating factors and no mitigating ones. Disbarment is appropriate.

¶45 The hearing officer was well within his discretion to refuse the continuance and to refuse to allow Fredric's brother pro hac vice status. Nor does Fredric have any cognizable right to subpoena judges to explain their reasoning or to demand that the Washington State Bar Association admit that judges are corrupt. I would disbar.

C. JOHNSON, FAIRHURST, and J.M. JOHNSON, JJ., concur with CHAMBERS, J.

Reconsideration denied March 5, 2010.