[No. 75398-9.   En Banc.]
Argued February 17, 2005.   Decided May 12, 2005.

THE STATE OF WASHINGTON, *Respondent*, v. KHATIB M. ABD-RAHMAAN, *Petitioner*.

*Gregory C. Link* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng*, *Prosecuting Attorney*, and *Carla B. Carlstrom*, *Deputy*, for respondent.

¶1 C. JOHNSON, J. — This case involves the issue of the admissibility of hearsay statements of unavailable witnesses in a sentencing modification hearing. Petitioner Khatib Abd-Rahmaan argues that the United States Supreme Court ruling in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), applies here and requires the exclusion of hearsay evidence because Abd-Rahmaan did not have a prior opportunity to cross-examine the witnesses. In the alternative, Abd-Rahmaan argues the trial court erred in admitting hearsay evidence without making specific findings of good cause. We hold that *Crawford* does not apply here. Though we agree with the analytical framework employed by the Court of Appeals, we do not find the record made by the trial court sufficient to establish good cause to admit the hearsay evidence. Therefore, we reverse the decision of the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

¶2 In June 1999, Abd-Rahmaan pleaded guilty pursuant to an *Alford* plea[1] to delivery of cocaine. Clerk's Papers (CP) at 7-15. Abd-Rahmaan was sentenced to 38 months in custody and 12 months community placement. CP at 23.

¶3 In January 2003, the State sought to modify Abd-Rahmaan's sentence, alleging violations of three conditions

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

of his community placement: (1) that Abd-Rahmaan failed to report to his community corrections officer (CCO), (2) that Abd-Rahmaan failed to provide truthful answers to a polygraph test, and (3) that Abd-Rahmaan consumed a controlled substance. Verbatim Report of Proceedings (VRP) at 2. At the sentence modification hearing, the State conceded that there was no order for the polygraph test in the judgment and sentence, and the court found nothing to support the allegation that Abd-Rahmaan consumed a controlled substance. Regarding the allegation that Abd-Rahmaan failed to report, the trial court heard testimony from Chris Salatka, Abd-Rahmaan's CCO. Salatka stated:

> Mr. Abd-Rahmaan was instructed to report on all days he does not work at the Millionaires' [sic] Club. When I discovered, after he took his polygraph, he disclosed what he had been doing or had not been doing. I followed up at the Millionaires' [sic] Club. They reported to me that he had not been working on the days that I have listed on December 4th, 10th, 11th, the 12th and 13th. . . .

> He was terminated from the Federal Express on the first day he was working for them. And the reason why he was terminated was because they claimed he was dropping products. And he was, I guess he was. It was his job to carry the expensive boxes of alcohol, and he dropped several boxes. So they requested of him to leave. And at that time Mr. Abd-Rahmaan, according to this particular person at Federal Express, accused him of making threatening and intimidating gestures. They told him they felt unsafe and wanted him out of there. Now, when I followed up with what happened, after the polygraph, the Millionaires' [sic] Club reported to me that he was not allowed to work through the service of the Millionaires' [sic] Club because of what he did at the Federal Express. And, in addition, because Mr. Abd-Rahmaan did not disclose his status.

VRP at 5-6, 9-10. The court overruled Abd-Rahmaan's objection to these statements as unreliable hearsay, but did not specifically state the reasons for admitting the hearsay evidence. VRP at 10. Abd-Rahmaan was then given an opportunity to present his version of the events. After hearing both accounts, the trial court found that Abd-

Rahmaan violated the conditions of his sentence by failing to report to his CCO and ordered 60 days of confinement.

¶4 On appeal, Division One of the Court of Appeals addressed whether the right to confrontation necessitates a specific written finding that hearsay evidence is reliable.[2] *State v. Abd-Rahmaan*, 120 Wn. App. 284, 84 P.3d 944 (2004). That court found sentence modification hearings to be substantially similar to other revocation hearings, requiring the minimum due process protections articulated in *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Finding that *Morrissey* does not provide an absolute right to confrontation, the Court of Appeals held that hearsay evidence is admissible in a sentence modification hearing where the hearsay is reliable and where there is good cause to allow it. The court found the testimony provided by the CCO regarding Abd-Rahmaan's employment status presented adequate indicia of reliability based on the detailed accounts of Abd-Rahmaan's employment given to the CCO by the Millionair Club and Federal Express. In further assessing the reliability of the hearsay statements, the court found it persuasive that Abd-Rahmaan participated in the hearing, was able to give his version of the events, and had the opportunity to call witnesses to rebut the CCO's testimony and present corroborative evidence had he wished to do so. Additionally, the Court of Appeals held the trial court had good cause to allow the hearsay evidence, inferring that there was difficulty and expense in providing the live witnesses. While the Court of Appeals noted that it preferred trial courts to make specific, written findings regarding the reliability of the evidence and the difficulty or expense of presenting live witnesses, it found the trial court record sufficient to understand the reasons for admitting the hearsay evidence.

---

[2] The Court of Appeals first addressed whether it should dismiss the case because Abd-Rahmaan had already been released from custody, making the issue moot. The court found the issue presented a matter of continuing and substantial public interest and decided to reach the merits of the appeal.

¶5 After Abd-Rahmaan's motion for reconsideration was denied in the Court of Appeals, we granted limited review to determine whether the trial court erred in admitting the hearsay evidence.

## ANALYSIS

¶6 Conceding that probationers do not have the same due process protections as criminal defendants, Abd-Rahmaan contends that on the basis of the United States Supreme Court decision in *Crawford*, cross-examination is the only permissible means of assessing the reliability of hearsay evidence. Because the due process required at a parole revocation hearing or sentencing modification hearing parallels the Sixth Amendment right to confrontation, Abd-Rahmaan argues the requirements set forth in *Crawford* should be applied in those settings. Alternatively, if we find that *Crawford* does not apply here, Abd-Rahmaan argues the trial court erred in admitting the hearsay because there was no finding of the reliability of the hearsay evidence or good cause to admit it.

¶7 The seminal case involving an individual's due process rights at a parole revocation hearing is the United States Supreme Court decision in *Morrissey*. In that case, the Court addressed "whether the Due Process Clause of the Fourteenth Amendment requires that a State afford an individual some opportunity to be heard [before] revoking his parole." *Morrissey*, 408 U.S. at 472. Beginning with the assumption that the revocation of parole is not part of a criminal prosecution and recognizing that an individual is not guaranteed the "full panoply of rights" due in that setting, *Morrissey*, 408 U.S. at 480, the Court found that the Fourteenth Amendment guarantees minimum due process requirements because parole revocation involves deprivation of a conditional liberty. The following minimum due process protections are required in a parole revocation hearing:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) *the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)*; (e) a "neutral and detached" hearing body . . . ; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey*, 408 U.S. at 489 (emphasis added). These requirements exist to ensure that a revocation of parole will be based on verified facts and accurate information of the parolee's behavior. However, the Court stated that the process should be flexible, allowing the admission of evidence that would not be admitted in an adversary criminal trial, including letters and affidavits. *Morrissey*, 408 U.S. at 489.

¶8 In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), the United States Supreme Court found probation revocation hearings to require the same due process rights as established in *Morrissey*. Acknowledging that revocation of probation deprives an individual of a conditional liberty, the Court clarified that probation revocation, like parole revocation, is not a stage in the criminal prosecution. The Court specifically addressed the right of an individual to cross-examine live witnesses and emphasized that it did not intend in *Morrissey* to prohibit the use of alternatives to live testimony in these settings, including affidavits, depositions, and documentary evidence. *Scarpelli*, 411 U.S. at 782 n.5.

¶9 We applied the requirements set forth in *Morrissey* to a revocation hearing in *State v. Dahl*, 139 Wn.2d 678, 990 P.2d 396 (1999). In that case, we addressed whether an individual's due process rights were violated where a trial court admitted hearsay evidence in a revocation hearing. Recognizing that a revocation hearing is not a criminal proceeding, we applied a balancing analysis where we weighed the reliability of the hearsay evidence against the

difficulty in procuring the live witness. Finding that the minimal due process right to confront and cross-examine witnesses is not absolute, we held that *"Morrissey* requires that a finding of a parole violation be 'based on verified facts and that the [court's] exercise of discretion will be informed by an accurate knowledge of the parolee's behavior.' " *Dahl*, 139 Wn.2d at 688 (alteration in original) (quoting *Morrissey*, 408 U.S. at 484). Because the hearsay evidence presented was neither demonstrably reliable nor necessary in that case, we held that Dahl's due process rights were violated.

¶10 In March 2004, the United States Supreme Court ruled in *Crawford* that a defendant's right to confrontation under the Sixth Amendment is violated where testimonial hearsay is admitted at trial and the defendant has not been afforded the prior opportunity to cross-examine the witness. *Crawford* overruled the United States Supreme Court's prior decision in *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), which held that, under the confrontation clause, statements of a witness unavailable at trial may be admitted only if the hearsay bears adequate indicia of reliability. The *Crawford* Court rejected this conclusion, stating that "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.' " *Crawford*, 541 U.S. at 61. The Court noted that the confrontation clause itself reflects both a judgment of the desirability of reliable evidence and the sense that reliability is best determined in criminal prosecutions by confrontation. Under this analysis, accordingly, testimonial evidence is inadmissible at a criminal trial where a witness is unavailable and the defendant has not been afforded the prior opportunity to cross-examine the witness.

¶11 Abd-Rahmaan argues that the rule articulated in *Crawford* should apply to the right to confront witnesses at a sentence modification hearing because the right to confront a witness in a parole revocation hearing under

*Morrissey* incorporates the guaranties of the Sixth Amendment. He contends that no constitutionally permissible means exist to assess the reliability of testimonial evidence absent confrontation. We disagree.

¶12 The confrontation clause of the Sixth Amendment explicitly applies to "criminal prosecutions." The United States Supreme Court and this court have recognized the different due process requirements existing in parole revocation hearings as opposed to the right to confrontation in criminal prosecutions. For the purposes of confrontation, the former are analyzed under the Fourteenth Amendment, while the latter are analyzed under the Sixth Amendment. By its own terms, the guaranties of the Sixth Amendment do not apply in these postconviction settings but to "criminal prosecutions." We also note that in *Crawford*, the United States Supreme Court analyzed the right to cross-examine witnesses exclusively within the context of the confrontation clause of the Sixth Amendment. Congruent with the explicit terms of the Sixth Amendment, the *Crawford* holding applies to criminal prosecutions and does not require prior cross-examination of testimonial evidence in civil proceedings or in postconviction hearings.

¶13 While the United States Supreme Court overruled *Roberts* in *Crawford*, we find no indication that it overruled the decisions in *Morrissey* and *Scarpelli*. The minimum rights guaranteed an individual in a parole revocation hearing as outlined in *Morrissey* are grounded in the due process clause of the Fourteenth Amendment, not the Sixth Amendment. No meaningful difference exists between sentence modification hearings and parole revocation hearings for the purposes of this inquiry; both settings involve the potential deprivation of a conditional liberty. In *Morrissey* and *Scarpelli*, the United States Supreme Court held that part of the process required in a parole revocation hearing was the right to confront adverse witnesses unless good cause existed not to allow the confrontation. The Court clarified in *Scarpelli* that it did not intend to limit the use of alternatives to live testimony in these settings, explicitly

including affidavits and other documentary evidence, which would otherwise be considered hearsay. Again, although an individual is guaranteed some rights in postconviction hearings, it is not the "full panoply of rights" guaranteed a defendant in a criminal prosecution. *See Morrissey*, 408 U.S. at 480.

¶14 We find nothing in *Crawford* to support Abd-Rahmaan's argument that the United States Supreme Court intended to overrule *Morrissey* and *Scarpelli*, and we will not find it by implication. Since sentence modification hearings are not criminal prosecutions, the more flexible confrontation requirements under the due process clause of the Fourteenth Amendment still control. As we stated in *Dahl*, "[t]he minimal *due process right* to confront and cross-examine witnesses is not absolute." *Dahl*, 139 Wn.2d at 686 (emphasis added).

¶15 Most federal courts have agreed with our conclusion that *Crawford* is inapplicable in parole revocation hearings.[3] In *United States v. Aspinall*, 389 F.3d 332 (2d Cir. 2004), the Second Circuit found that *Crawford*, which involved a criminal proceeding, neither altered the requirements under *Morrissey* or *Scarpelli* nor suggested that the principles of the confrontation clause as enunciated in *Crawford* were applicable to parole revocation proceedings. The court in *Aspinall* emphasized the long recognized distinction between criminal proceedings and parole revocations.

¶16 Similarly, in *United States v. Barazza*, 318 F. Supp. 2d 1031 (S.D. Cal. 2004), the United States District Court for the Southern District of California found the rule articulated in *Crawford* inapplicable in a release revocation proceeding. The court followed precedent of the Ninth Circuit, which established the right to confrontation recognized in *Morrissey* as a due process right emanating from the Fourteenth Amendment, not from the Sixth Amend-

[3] However, there is one decision from federal district court finding that *Crawford* applies in a parole revocation proceeding. *See Ash v. Reilly*, 354 F. Supp. 2d 1 (D.D.C. 2004).

ment.[4] The court concluded that the United States Supreme Court did not implicitly overrule *Morrissey* and *Scarpelli* in its decision in *Crawford*.

¶17 We find that *Crawford* does not apply in sentence modification hearings. In these postconviction settings, we continue to apply the two-prong test of *Dahl* to establish good cause where we consider the reliability of the hearsay in light of the difficulty in procuring the live witness.

¶18 Even if *Crawford* does not apply here, Abd-Rahmaan urges us to reverse the Court of Appeals' decision in this case and find that the trial court erred in admitting the hearsay evidence. He contends that there was no finding of good cause by the trial court to admit the evidence as required under *Dahl*.

¶19 "Good cause has thus far been defined in terms of the difficulty and expense of procuring witnesses in combination with 'demonstrably reliable' or 'clearly reliable' evidence." *State v. Nelson*, 103 Wn.2d 760, 765, 697 P.2d 579 (1985). The trial court here made no record to support a conclusion that there was good cause to admit the hearsay evidence. There was neither a showing in the record that the hearsay evidence was demonstrably reliable nor was there any comment on the difficulty or cost in procuring live witnesses. Although written findings are useful, trial courts are not required to make written findings establishing good cause to admit hearsay evidence in sentence modification hearings; however, appellate courts require some record explaining the evidence on which the trial court relied and the reasons for the admission of the hearsay evidence. These requirements are necessary in order for an appellate court to ascertain whether there is substantial evidence to support the trial court's decision to modify a sentence. Unlike the Court of Appeals, we find the record below insufficient to establish good cause for the admission of the hearsay evidence or the reasons for the trial court's decision. The modification of Abd-Rahmaan's sentence is in-

---

[4] *See United States v. Daniel*, 209 F.3d 1091 (9th Cir. 2000); *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999).

valid to the extent the trial court admitted and relied on the hearsay evidence provided by the CCO's testimony.

## CONCLUSION

¶20 We reverse the Court of Appeals' decision. While we note that relief for Abd-Rahmaan here is moot because he has already served his time, we issue this opinion to clarify the rule for future sentence modification hearings. We hold that *Crawford* does not apply in sentence modification hearings. Under *Morrissey* and *Dahl*, the right to confront witnesses at sentence modification hearings exists unless good cause is established by the trial court to admit the hearsay evidence. When admitting hearsay on a finding of good cause, trial courts are required to articulate the basis on which they are admitting the hearsay testimony by either oral or written findings in order to facilitate appellate review. While we agree with the Court of Appeals that trial courts should articulate the reasons for admitting hearsay evidence in these hearings, we disagree that the record here is sufficient to review the trial court's reasoning.

ALEXANDER, C.J., and MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

[No. 73893-9.   En Banc.]
Argued September 14, 2004.   Decided May 12, 2005.