# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE___ JUN 0 6 2013

_____
CHIEF JUSTICE



This opinion was filed for record
at 8:00 a.m. on June 06, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Disciplinary Proceeding Against<br><br>FREDRIC SANAI, an Attorney at Law. | NO. 201,049-1 (WSBA #3234)<br><br>EN BANC<br><br>Filed ____ JUN 0 6 2013 |

GORDON McCLOUD, J. — Fredric Sanai seeks review of a unanimous recommendation of disbarment by the Washington State Bar Association Disciplinary Board (Board). The hearing officer upheld each of the Washington State Bar Association's (WSBA) nine counts against Sanai. The officer ruled that Sanai filed multiple frivolous motions and claims for purposes of harassment and delay, repeatedly and willfully disobeyed court orders and rules, brought frivolous suits against judges who ruled against him, and filed similar claims multiple times in multiple jurisdictions for purposes of delay. The officer concluded that this conduct violated Rules of Professional Conduct (RPC) 3.1 (filing frivolous claims), RPC 3.2 (delaying litigation), RPC 3.4(c) (knowingly disobeying obligation under rules of a tribunal), RPC 4.4(a) (embarrassing, delaying, or

burdening third person), RPC 8.4(a) (violating or attempting to violate the RPCs), RPC 8.4(d) (engaging in conduct prejudicial to the administration of justice), RPC 8.4(j) (willfully disobeying court order), RPC 8.4(l) (violating duty or sanction imposed under Rules for Enforcement of Lawyer Conduct (ELC) in connection with disciplinary matter), and RPC 8.4(n) (engaging in conduct demonstrating unfitness to practice law). The hearing officer found many of these violations occurred multiple times, were intentional, and caused actual harm. Sanai has not meaningfully contested the hearing officer's factual findings, and we reject his challenges to the officer's legal conclusions. We adopt the recommendation of the Board and disbar Sanai from the practice of law in Washington State.

## FACTS AND PROCEDURAL HISTORY

Fredric Sanai was admitted to practice in Washington in 2002. He and his brother Cyrus then represented their mother, Viveca, in her divorce from their father, Sassan.[1]

That divorce was finalized on April 15, 2002, when Snohomish County Superior Court Judge Thibodeau issued the dissolution decree. The decree ordered Viveca and Sassan to sell the family home and a vacant lot and to divide the proceeds equally. Many years of acrimonious litigation followed.

### I.  The Vacant Lot Dispute

On April 26, 2002, Viveca filed a notice of supersedeas without bond in an attempt to stay the order to sell the vacant lot. On June 13, 2002, Judge Thibodeau

---

[1] Because many people involved in this case have the same last name, we use the Sanai family members' first names for clarity.

ruled that Viveca's conduct was intended to delay and frustrate the court's rulings. He imposed a $10,000 sanction against Viveca in attorney fees, disqualified Cyrus from representing his mother, and ordered the posting of bonds to stay any sales of the house, lot, or personal property. After Viveca filed supersedeas bonds pledging the assets of one Dorothy Tuson, Judge Thibodeau clarified that cash or commercial bonds were required. He also issued an order requiring that a $50,000 bond for the lot be posted by July 2, 2002, or the stay on the sale would be lifted. On July 2, 2002, instead of posting a bond, Fredric filed a lis pendens notice on the vacant lot, thus clouding title to that property. In response, Judge Thibodeau issued three orders on September 27, 2002. First, he disqualified Fredric from representing his mother. Second, he ordered all lis pendens stricken unless the Court of Appeals stayed that order, he barred the parties from filing any further lis pendens, and he barred any further action to delay the sale of the lot. Finally, the judge imposed $1,000 in terms against Viveca because Fredric (on her behalf) had brought a frivolous motion for a protective order and sanctions.

On December 20, 2002, Judge Thibodeau imposed further sanctions based on the "continuing appeals of every ruling of this court [that are] greatly prolonging the matter and costing substantial attorney fees." Ex. 44, at 3. The judge stated that "[t]he continuing appeals border on the frivolous, and must stop for the benefit of both parties." *Id.* The order imposed $2,500 in terms against Viveca in favor of Sassan; Fredric and Cyrus had authored most of the continuing appeals.

On November 4, 2002, a Court of Appeals commissioner denied Fredric's motion to overturn the September 27 order striking the lis pendens. On February 11, 2003, the Court of Appeals denied Fredric's motion to modify the commissioner's ruling. Ex. 95. Accordingly, on February 13, 2003, Judge Thibodeau released the lis pendens filed by Fredric on July 2, 2002.

Cyrus filed a new one that same day. This new notice of lis pendens was based on a new federal case initiated on December 24, 2002, by Fredric and Cyrus as plaintiffs. When that case was transferred to United States District Court Judge Zilly, who was already presiding over another federal case involving the Sanais' divorce, Judge Zilly ordered the release of the February 13 lis pendens on April 18, 2003. Cyrus filed an amended lis pendens on April 21, 2003. On May 15, 2003, Judge Zilly released the new lis pendens and ordered the parties "to cease and desist from any further action to delay or obstruct the sale of either [the house or the vacant lot] or filing any further lis pendens." Ex. 206, at 43-44.

On May 20, 2003, Fredric filed a new claim on behalf of Viveca for partition in King County Superior Court regarding the same property. The same day, he filed another lis pendens, this one based on the new state case. He amended that lis pendens on July 7, 2003. On August 11, 2003, Judge Thibodeau held Viveca in contempt and imposed $5,000 in sanctions for continuing to obstruct the vacant lot sale by filing the July 7, 2003, lis pendens. Although the contempt order named Viveca, it was Fredric, acting on her behalf, who signed and filed both the King County case and the new lis pendens. On May 2, 2005, the Court of Appeals

affirmed Judge Thibodeau's August 11, 2003, order imposing sanctions and awarded Sassan attorney fees on grounds of frivolousness and intransigence.

Judge Zilly also acted in response to Fredric's July 7, 2003, lis pendens, because it violated his May 15, 2003, order. On September 26, 2003, Judge Zilly imposed contempt sanctions of $3,400 in attorney fees against Fredric and Viveca, as well as a $2,500 sanction to be paid to the court. Judge Zilly again ordered that no further lis pendens be filed. The Ninth Circuit affirmed the contempt order in an unpublished opinion. *Sanai v. Sanai*, 141 Fed. Appx. 677 (9th Cir. 2005) (unpublished).

## II. The Family Home Dispute

Selling the home proved just as contentious as selling the lot. On August 7, 2002, Fredric filed a lis pendens on the house. Cyrus filed another on March 7, 2003. On March 10, 2003, Judge Thibodeau ordered Viveca to vacate the home by May 10, 2003, or he would impose sanctions. On July 7, 2003, Fredric filed another notice of lis pendens against the house; like the lis pendens that had been filed against the lot that same day, the notice was based on the King County partition action described below.

As discussed above, on May 20, 2003, Fredric filed a new state court proceeding in King County Superior Court and made a number of claims, including asking the court to quiet title to the house and lot in Viveca alone. Fredric used this action to file lis pendens in violation of both Judge Thibodeau's order of September 27, 2002, and Judge Zilly's order of May 15, 2003. On September 15, 2003, the King County Superior Court ordered a change of venue to

"Snohomish County, the Court that first began dealing with the parties' dissolution and at the time this Order is drafted is *still* dealing with the dissolution and the steps needed to fully effectuate the dissolution." Ex. 154, at 3.

On December 16, 2003, the Snohomish County Superior Court dismissed that case with prejudice and imposed sanctions against Fredric and Viveca jointly and severally, including $13,071.22 in attorney fees and $2,500 to the court for forum shopping, misrepresentation to the courts, and compensation for waste of judicial resources. The judgments were satisfied in June 2005. On January 23, 2006, the Court of Appeals affirmed the change of venue, the dismissal, and the sanctions orders. The Court of Appeals for a second time awarded attorney fees to Sassan on grounds of frivolousness and intransigence. *Sanai v. Sanai*, noted at 131 Wn. App. 1014 (2006).

On November 26, 2003, Judge Thibodeau ordered Viveca to release all lis pendens filed against the family home and to use her best efforts to obtain releases of all the other lis pendens filed by her children. On December 18, 2003, Viveca released the lis pendens "under protest." Exs. 57, 58. In May 2005, Judge Thibodeau finally authorized the acceptance of a pending offer on the family home. On May 18, 2005, Cyrus filed a lis pendens on the home. When Judge Thibodeau learned of the new lis pendens, he recused himself—he explained that he was no longer capable of impartiality.

III.    *The Appeal from the Dissolution*

On April 4, 2003, Fredric filed the appellate brief in Viveca's appeal of the dissolution and other rulings. On September 4, 2003, the Court of Appeals denied

leave to argue the appeal. In an unpublished decision issued December 22, 2003, the Court of Appeals held the appeal filed by Fredric was frivolous and was filed for purposes of delay, and sanctioned Viveca $10,000. *In re Marriage of Sanai*, noted at 119 Wn. App. 1053 (2003).

Beginning on March 12, 2004, Viveca (this time with Cyrus as her counsel) inundated the Supreme Court with motions regarding review of the Court of Appeals decision. On November 5, 2004, this court denied the petition for review and all other pending motions and sanctioned Viveca $4,000 for frivolous filings and delay, to be paid to this court. *In re Marriage of Sanai*, noted at 152 Wn. App. 1028 (2004).

*IV.    Multiple Other Filings*

Fredric filed multiple "emergency motions" following the dissolution decree. *See, e.g.*, Request for Emergency Relief, Ex. 67; Request for Emergency Grant of Stay, Ex. 73; Request for Emergency Grant of Stay, Ex. 75. All these motions were found to be frivolous or meritless by courts and court commissioners.

Fredric also filed multiple motions for sanctions and a protective order based on an allegation that Sassan had revealed confidential health information about Viveca. On August 5, 2002, Fredric moved the Court of Appeals for a protective order, accusing Sassan of violating patient confidentiality. On August 14, 2002, the court commissioner denied the motion and stated that the matter "must be pursued in the trial court." Ex. 71.

On August 19, 2002, Fredric signed a note for the September 20, 2002, civil motions calendar, on a motion seeking a protective order and sanctions against Kenneth Brewe, his father's former attorney, for revealing confidential patient information. On September 20, 2002, Brewe appeared, but Fredric did not. Fredric had not confirmed the motion, but never told Brewe. On October 11, 2002, Judge Thibodeau granted Brewe's motion for sanctions (but denied his request for attorney fees) and ordered $500 in sanctions against Fredric and Viveca.

On October 18, 2002, Fredric filed several motions with the Court of Appeals, including one that renewed the request for a protective order against Sassan. On November 4, 2002, the Court of Appeals commissioner again denied that motion and stated "counsel is on notice that frivolous motion practice in this court could lead to sanctions." Ex. 84, at 2. Fredric filed a motion to modify the ruling on November 6, 2002. On February 11, 2003, the Court of Appeals denied it. Ex. 95.

Despite the warnings regarding, and sanctions for, his frivolous filings, on January 27, 2003, Fredric filed motions for discretionary review of, among other things, the order disqualifying him from representing his mother and the December 20, 2002, order holding Viveca in contempt. A commissioner referred these motions to a panel, noting that "the ongoing appellate litigation is spawning inordinate management problems for the trial court, not to mention expenses for the respondent." Ex. 94, at 1-2. On March 11, 2003, a panel of the Court of Appeals dismissed the appeals and stated, "We caution that any future frivolous motions will result in sanctions." Ex. 96, at 2.

*V.   The Supreme Court Filings and Further Court of Appeals Motions*

On April 7, 2003, Fredric filed a motion for discretionary review with this court. On April 14, 2003, Fredric followed up with another motion to this court, seeking to stay Judge Thibodeau's order requiring Viveca to vacate the family home. On April 22, 2003, Fredric filed a separate motion with the Court of Appeals requesting review of the same order requiring Viveca to vacate the family home. On April 24, 2003, the Court of Appeals commissioner ruled that the court would not act unless Fredric showed that the second motion was different from the prior motion pending before the Supreme Court. On April 28, 2003, Fredric filed a supplement to the April 22 Court of Appeals motion. On May 1, 2003, the Court of Appeals commissioner again observed that the same issue was before the Supreme Court and transferred the motion to this court. On May 5, 2003, Fredric filed with this court a motion for revision of Judge Thibodeau's March 10, 2003, order to Viveca to vacate the family home. On May 7, 2003, this court's commissioner denied all the motions. Ex. 115A. Fredric filed a request for clarification, which the commissioner denied on May 13, 2003. Fredric filed numerous other motions in the following two weeks, including another motion for a protective order based on disclosure of health information, the same claim that had been rejected multiple times by the trial and appellate courts, and for which Fredric had previously been sanctioned by the trial court. On June 10, 2003, this court's commissioner ruled that the submissions would not be considered, denied the original motion for discretionary review, and dismissed the proceedings.

Over the next few months, Fredric continued to file multiple motions on Viveca's behalf with this court. Finally, on September 5, 2003, the chief justice of this court denied all pending motions, including a motion to modify the commissioner's ruling denying review, and imposed sanctions of $1,000 jointly and severally on Fredric and Viveca.[2] This court forwarded the matter to the WSBA on September 15, 2003.

## VI. Suits against the Judges

On September 9, 2003, Fredric and Viveca filed suit as plaintiffs in federal court against this court's commissioner and others who had ruled against them, including judicial officers of the Snohomish County Superior Court and the Court of Appeals. On December 12, 2003, the federal district court dismissed the case for lack of subject matter jurisdiction; the federal court characterized this new filing as an "attempt to obtain review of unfavorable decisions of the Washington

---

[2] On March 20, 2013, Viveca filed a motion requesting that the court vacate its September 5, 2003, order denying her motion to modify the commissioner's ruling denying discretionary review. The same day, Fredric filed a motion requesting judicial notice in this disciplinary case of the facts that Viveca filed the motion, requested relief, and included attachments. On April 30, 2013, Fredric filed another motion requesting judicial notice of a subsequent filing by Viveca, a declaration by Sassan, and several allegations about Sassan's income and bank accounts. This court determined that Fredric's motions would be considered on the merits in this opinion. Fredric argues that under ER 201(d) we must take judicial notice of any fact that a party brings to our attention. ER 201(d) does state that a "court shall take judicial notice if requested by a party and supplied with the necessary information." However, ER 201(a) states that the "rule governs only judicial notice of adjudicative facts." An adjudicative fact is a "controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties." BLACK'S LAW DICTIONARY 669 (9th ed. 2009). The fact that Viveca filed the documents described above and the factual allegations regarding Sassan's income and bank accounts are irrelevant to whether Fredric's behavior warrants disciplinary sanctions. Thus they are not adjudicative facts in this case, and ER 201 does not apply. The motions for judicial notice are denied.

state courts by wrapping their state law-based challenges in the fabric of federal constitutional claims." Ex. 137, at 11. On August 17, 2005, the Ninth Circuit Court of Appeals affirmed in an unpublished opinion. *Sanai*, 141 Fed. Appx. 677. On June 24, 2008, the Ninth Circuit remanded for dismissal another suit by Fredric, this time one against Chief Justice Alexander, alleging civil rights violations in connection with Fredric's WSBA disciplinary proceedings.

VII.    *The Wiretap Cases*

a.  California State Court Wiretap Case

In March 2001, Fredric, Cyrus, and Viveca (along with other members of the Sanai family who had sided with Viveca in the divorce) filed a complaint in Los Angeles County Superior Court alleging, among other things, that Sassan wiretapped their communications. The case was quickly dismissed for lack of jurisdiction.

b.  Washington State Court Wiretap Case

Fredric, Cyrus, Viveca, and others then filed a complaint alleging wiretapping in King County Superior Court on August 20, 2002. They made the same disclosure-of-private-health-information claim that other courts had previously dismissed as frivolous.

They also included a claim for libel, based on grievances filed with the WSBA by Sassan and his lawyer. Such claims are barred by ELC 2.12 (formerly Rules for Lawyer Discipline 12.11(b) (repealed October 1, 2002)), which provides that communications to the WSBA are "absolutely privileged, and no lawsuit predicated thereon may be instituted against any grievant, witness, or other person

11

providing information." In November 2002, the WSBA wrote to Fredric and notified him of this rule.

On December 11, 2002, the King County case was transferred to Snohomish County. On June 17, 2003, a court commissioner imposed $3,000 in sanctions against Viveca and Fredric, jointly and severally, under CR 41 and CR 15. On October 18, 2004, the Court of Appeals reversed the sanctions as improper under CR 41 and CR 15. *Sanai v. Sanai*, noted at 123 Wn. App. 1046 (2004). However, the court remanded for the commissioner to examine whether the sanctions were warranted under CR 11. The record before us does not reveal what happened on remand.

### c. Federal Court Wiretap Case Part I: Lis Pendens Disputes and Contempt Order

On October 18, 2002, less than a month after initiating the wiretap action in King County Superior Court, Fredric, Cyrus, Viveca, and others sued Sassan and others in federal court, alleging, among other things, illegal wiretapping. They sought over $9,000,000 in damages. On December 17, 2002, these plaintiffs sought an injunction and tried to attach the vacant lot to enjoin disposition of that property pending resolution of the pending federal claim. Federal district court Judge Zilly denied injunctive relief. After this attempt to stay the sale of the lot failed, Fredric and Cyrus filed a second complaint in federal court. It was this case that Fredric and Cyrus used to file new lis pendens in violation of Judge Thibodeau's September 27, 2002, order, as described above. On March 18, 2003, this second federal case was reassigned to Judge Zilly as related to the first federal

wiretap case. The plaintiffs' actions in the lis pendens disputes described above led to Judge Zilly's above-mentioned contempt sanctions on October 1, 2003, imposing $3,400 in attorney fees against Fredric and Viveca, plus $2,500 to be paid to the court.

### d. Federal Court Wiretap Case Part II: The Subpoena Sanctions

On June 6, 2003, the plaintiffs filed their third amended complaint in the federal court. On June 20, 2003, Fredric signed a subpoena as "Attorney for Plaintiff Ingrid Buron Sanai," issued to Whatcom Educational Credit Union and seeking all account statements for Mary McCullough—an associate of Sassan's whom the plaintiffs also named as a defendant in the wiretap suits—from 1990 onward. Ex. 212, at 45. Sanai failed to give McCullough's attorney prior notice of the subpoena, thereby violating Fed. R. Civ. P. 45(b)(1).[3] Judge Zilly therefore quashed that subpoena on July 31, 2003.

On October 17, 2003, a magistrate judge (to whom Judge Zilly had referred the defendants' discovery protective motion) found that a large number of other subpoenas signed by Fredric were calculated to harass rather than lead to the discovery of relevant evidence. The magistrate judge therefore ordered the plaintiffs not to issue any further subpoenas of the kind described in the order without prior court approval, to return any acquired documents to the defendants, and to retain no copies.

---

[3] Fed. R. Civ. P. 45(b)(1) states in relevant part that "[i]f the subpoena commands the production of documents, . . . then before it is served, a notice must be served on each party."

Fredric violated this order in several ways. He used the documents acquired through unlawful subpoenas in the Washington Court of Appeals and the King County Superior Court, and he failed to return them to the defendants. Fredric admits as much, "Once Plaintiffs received the discovery, Plaintiffs were free to use it. Magistrate Judge Theiler's order to return the discovery was too late. The cat is out of the bag." Ex. 227, at 6. Further, despite the order barring Fredric from issuing any additional similar subpoenas without prior court approval, on October 22, 2004, Fredric signed a subpoena as "Attorney for Plaintiff Ingrid Sanai Buron." The subpoena was issued to Redmond General Insurance Agency, and it sought copies of everything related to a replevin bond, as well as anything containing the names Sassan Sanai or Mary McCullough, by October 29, 2004. Ex. 232A, at 1, 3. On November 4, 2004, McCullough's attorney received a copy of the subpoena, postmarked November 3, 2004—another violation of Fed. R. Civ. P. 45(b)(1).

On January 3, 2005, Judge Zilly granted the defendants' motion for sanctions relating to the Redmond Insurance subpoena issued by Fredric. Judge Zilly stated, "Plaintiffs' failure to timely notify the Defendants of the subpoena duces tecum was misconduct," and he disqualified Fredric from participating as counsel in the matter. Ex. 244, at 3. On March 10, 2005, Judge Zilly sanctioned Fredric $1,740 in attorney fees for the failure to notify counsel of the subpoena.

e. Federal Wiretap Case Part III: Dismissal and Sanctions

The third amended complaint, filed on June 6, 2003, contained 17 claims. The ninth claim was again based on complaints made to the WSBA; as discussed above, Fredric had previously been informed by the WSBA in November 2002 that

14

such actions based on grievances violated the ELCs. Causes of action 13-15 were based on Sassan's alleged disclosure of confidential health information; as discussed above, Fredric had already been sanctioned by Judge Thibodeau on October 11, 2002, for frivolously raising the same issue. Moreover, on November 4, 2002, as described above, a Court of Appeals commissioner had denied a motion on that same issue, stating that "counsel is on notice that frivolous motion practice in this court could lead to sanctions." Ex. 84, at 2. Fredric nevertheless included the claim in his complaint. On November 3, 2003, Judge Zilly granted summary judgment on claims 9 and 10, citing in part the WSBA complaint privilege about which Fredric had already been notified.

On July 9, 2004, Judge Zilly denied the plaintiffs leave to file a fourth amended complaint. On July 19, 2004, Fredric, Cyrus, and Viveca filed yet another suit in the District Court for the Western District of Washington. On July 23, 2004, Judge Pechman reassigned the case to Judge Zilly. On October 8, 2004, Judge Zilly dismissed the first and second claims as "substantially identical" to the 9th and 10th claims that he had previously dismissed from the third amended complaint. Ex. 282, at 2. These claims were again based on Sassan's complaints to the WSBA. The third claim was also dismissed as "nearly identical" to claims in the third amended complaint. Ex. 286, at 3. Judge Zilly also imposed sanctions of $5,000 each against Fredric, Cyrus, and Viveca for violations of Fed. R. Civ. P. 11. He explained that "[t]he Complaint re-alleges frivolous causes of action that were previously dismissed by the Court. Plaintiffs were aware that this Court had

previously rejected their legal and factual arguments, and had the benefit of this Court's prior Orders when drafting its new Complaint." Ex. 286, at 5.

On January 3, 2005, the federal court ordered the plaintiffs to show cause why their complaint should not be dismissed with prejudice "based on Plaintiffs' continued misconduct before this Court." Ex. 244, at 4. Then, on July 1, 2005, Judge Zilly dismissed all remaining claims with prejudice. *Sanai v. Sanai*, No. C02-21652, 2005 WL 1593488 (W.D. Wash. July 1, 2005) (unpublished). Noting that the plaintiffs had already been sanctioned (collectively) around $130,000 in both federal and state courts, Judge Zilly stated, "However, Plaintiffs persist in their misconduct. Plaintiffs' conduct shows that they will not respond to sanctions. Clearly, no other sanction the Court might impose, except for dismissal itself, would be effective in remedying this misconduct." Ex. 252, at 14. On November 4, 2005, Judge Zilly also imposed sanctions on Fredric, Cyrus, and Viveca totaling $273,437.00. On July 12, 2010, the Ninth Circuit, in an unpublished opinion, affirmed the dismissal. *Sanai v. Sanai*, 408 Fed. Appx. 1 (9th Cir. 2010) (unpublished).

Finally, on March 21, 2007, Cyrus, Fredric, Viveca, and Daria (another Sanai plaintiff) were sanctioned $14,041.50 in attorney fees for a frivolous federal Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §§ 1001-1461) claim in their third amended complaint. Judge Zilly found that the "Plaintiffs brought the ERISA claims in bad faith, without any reasonable basis in law or fact." Ex. 272A, at 6.

*VIII.    The Disciplinary Proceedings*

In 2004, just two years after he was admitted to practice in Washington, the WSBA initiated disciplinary proceedings against Fredric based on his conduct in the matters related above.   After several delays, in 2007, the hearing officer rejected Fredric's request for a continuance because the officer did not believe Fredric's doctor's note was credible.   The hearing officer held a full hearing in Fredric's absence and recommended disbarment.   A unanimous board adopted the officer's recommendation.   This court reversed, holding that the hearing officer abused his discretion by failing to grant Fredric the continuance.   *In re Disciplinary Proceeding Against Sanai*, 167 Wn.2d 740, 225 P.3d 203 (2009) (*Sanai* I).   We granted Fredric a new hearing.  *Id.*

After another full hearing, at which Fredric was present and testified, a different hearing officer recommended disbarment.   Findings of Fact (FF), Conclusions of Law (CL) and Hearing Officer's Recommendation.   Clerk's Papers (CP) at 1281-1337.   A unanimous board adopted the recommendation.   Fredric appealed.

ANALYSIS

STANDARD OF REVIEW

This court has ultimate responsibility for attorney discipline in Washington. *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 329, 157 P.3d 859 (2007).   We give great weight to the hearing officer's findings of fact, especially where the veracity of witnesses is concerned.   *In re Disciplinary Proceeding Against Poole*, 156 Wn.2d 196, 208, 125 P.3d 954 (2006).   We uphold

challenged findings as long as they are supported by substantial evidence. *Id.* An attorney challenging the evidence must "present argument to the court why specific findings of fact 'are not supported by the evidence and to cite to the record to support that argument.'" *In re Disciplinary Proceeding Against Haskell*, 136 Wn.2d 300, 311, 962 P.2d 813 (1998) (quoting *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998)).

We review a hearing officer's conclusions of law de novo, and uphold them if supported by the findings of fact. *In re Disciplinary Proceeding Against Behrman*, 165 Wn.2d 414, 422, 197 P.3d 1177 (2008). We review sanctions de novo, but where a sanction is recommended by a unanimous board, we will uphold the sanction "'in the absence of a clear reason for departure.'" *Id.* (quoting *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 717, 72 P.3d 173 (2003)).

## CHALLENGED FINDINGS AND CONCLUSIONS

Fredric challenges around 180 of the hearing officer's 229 findings of fact and conclusions of law in his assignments of error. Opening Br. on Appeal at 3. In his briefing, however, Fredric provides argument and citation to the record to support only one of these challenges: the challenge to FF 208. FF 208 (CP at 1330) states:

> Based on a US Bank account application, [exhibit] 601, Fredric claims to have finally proven that his father hid assets during his parents' dissolution because [Sassan's former certified public accountant] Maxeiner testified he had no knowledge of a sole proprietorship account for Sassan. But an account application checking the box 'sole proprietorship' does not establish that any such account existed or that any assets were 'hidden' in it. Even if it did, such information, if relevant, should have been developed and used ten year[s] ago rather

than being asserted now as a basis to delay these proceedings, and it does not excuse years of vexatious litigation and repeated frivolous claims.

Fredric argues that the exhibit *does* show that an account existed and that this information *was* developed and put in front of the trial courts as soon as it was obtained. He claims that the hearing officer's refusal to accept this evidence of fraud amounted to ignoring exculpatory evidence.

Fredric mischaracterizes the hearing officer's finding. Read in context, FF 208 is not a factual determination about whether hidden-assets evidence was offered 10 years ago. Instead, it is a conclusion that even if these documents did establish fraud, that "does not excuse years of vexatious litigation and repeated frivolous claims." FF 208 (CP at 1330). In other words, they are not relevant. The hearing officer cannot be faulted for making this finding; Fredric does not explain how even clear proof that his father committed fraud would undermine the conclusion that Fredric violated multiple RPCs.

In addition, exhibit 601B does not prove fraud. At most, the hearing examiner's conclusion that the document does not establish that "any such account existed" is not supported by substantial evidence. *Id.* But the exhibit does not prove any hidden assets existed.

Fredric does not present any argument or support for any other "assignments of error" regarding the factual findings. Thus, we will not consider them. *See In re Disciplinary Proceeding Against Poole*, 164 Wn.2d 710, 725, 193 P.3d 1064 (2008) (attorney challenging factual findings in disciplinary proceeding "must argue why the findings are not supported by the evidence and cite to the record in

support of the argument"). We note, however, that the record of this 14-day proceeding, containing over 2,300 pages of transcript and nearly 500 exhibits, fully supports the hearing officer's findings and conclusions.

The balance of this opinion deals with the claims Fredric actually did argue.

CONSTITUTIONAL CLAIMS AND RELATED ARGUMENTS

I. *Fredric's Unpreserved Confrontation Clause Claims Cannot Be Raised for the First Time on Appeal Because Failure To Apply Confrontation Clause Protections at Disciplinary Proceedings Does Not Constitute "Manifest Error"*

Fredric first argues that the discipline process violated his Sixth Amendment right to confrontation. Specifically, Fredric claims that his confrontation clause right was violated by the admission of various judicial orders, rulings, and opinions, without any opportunity for Fredric to cross-examine the judges who wrote them.

Fredric, however, did not preserve this claim for review for the vast majority of the admitted orders and rulings.[4] His numerous objections to the admission of prior written orders and rulings before the hearing officer were based on opposition to their use as substantive evidence, without citing the confrontation clause (and, in most cases, without citing a specific rule of evidence). *E.g.* Tr. at 124, 179, 251, 568, 684, 930, 1271, 1468.

It is true that under RAP 2.5(a)(3), a party may raise a "manifest error affecting a constitutional right" for the first time on appeal. But failure to apply confrontation clause protections in a lawyer discipline proceedings cannot be considered a "manifest" error. A confrontation clause error can be raised for the first time on appeal in a criminal case under the manifest error rule because the

---

[4] The WSBA essentially conceded at oral argument that Fredric had preserved this issue. From our review of the record, however, we reach the opposite conclusion.

confrontation clause is a constitutional protection that clearly applies at the trial of a criminal defendant. *See, e.g., State v. Kronich*, 160 Wn.2d 893, 899-901, 161 P.3d 982 (2007), *overruled on other grounds by State v. Jasper*, 174 Wn.2d 96, 271 P.3d 876 (2012). But this is a bar disciplinary proceeding, not a criminal trial. This court has never addressed whether attorney-respondents in bar disciplinary proceedings have a Sixth Amendment right to confront and cross-examine the witnesses against them. Instead, our prior cases note that the text of the Sixth Amendment "explicitly applies to 'criminal prosecutions.'" *State v. Abd-Rahmaan*, 154 Wn.2d 280, 288, 111 P.3d 1157 (2005). Thus, the denial of Sixth Amendment confrontation clause rights at a discipline proceeding does not constitute manifest constitutional error.

## II. Fredric's Preserved Confrontation Clause Claims Lack Merit

Fredric made express confrontation objections to the use of four of the WSBA's 320 exhibits. First, he objected to the use of one of Judge Zilly's orders holding Fredric in contempt. Specifically, Fredric objected to the question, "Did Judge Zilly hold you in contempt of court for filing that lis pendens?" Tr. at 1521. His counsel, Cyrus, responded, "Okay. I'm now going to object . . . because this is going to start coming up, and I'm going to call this the confrontation objection, so I'm going to assert the confrontation objection." Tr. at 1521-22. But the question was not whether a statement in the order was true or not. Judge Zilly entered a contempt order against Fredric for filing a lis pendens. The fact of the order's existence is not a truth asserted by the order. Nor was the order used to establish that Fredric violated an earlier order against filing lis pendens. That truth is established by the fact that an earlier order existed, Ex. 206, at 43-44 (May 15,

2003 order instructing parties to file no further lis pendens), and that Fredric filed a lis pendens after it was entered, Ex. 2, at 156, 166 (lis pendens filed by Fredric after May 15, 2003). Thus, even if Fredric did have confrontation rights in this disciplinary proceeding, they were not violated by admission of the fact that a contempt order existed.

Second, Fredric raised a "confrontation objection" to the assertion, "And at page 3, to refresh your recollection, about lines 9 to 11, Judge Zilly wrote that you and your mother effected a lis pendens filing in Snohomish County contrary to the order of the court." Tr. at 1530-31. This, in contrast to the contempt order above, is a statement that may be true or not true. However, any error in its admission was plainly harmless, since the truth of the matter asserted is indisputably established by other evidence showing that a court had previously ordered Fredric not to file any lis pendens and that Fredric thereafter filed lis pendens anyway.

Third, Fredric asserted a "confrontation" objection to the question: "Did you give notice to the financial institutions, Mr. Sanai, as required by paragraph 6 of the order?" Tr. at 1546. The "paragraph 6" in question states, in relevant part, "Plaintiffs are further ORDERED to notify in writing each financial institution to whom they have issued any subpoenas for such records, informing the institution that the subpoenas are withdrawn and the institution should not respond nor produce any of the material described in the subpoena." Ex. 220, at 3. Like the contempt order, there is no statement here that asserts the truth of any matter. The fact that an order existed, and that it ordered Fredric to give notice, does not implicate the confrontation clause.

Finally, Fredric asserted confrontation and due process clause objections to questions regarding an unpublished Court of Appeals opinion finding one of Viveca's appeals frivolous and awarding attorney fees against her. Tr. at 1884-85. Since the hearing officer in this instance sustained Fredric's objection, this cannot be the basis for a confrontation clause error. Tr. at 1885.

Fredric did not preserve any confrontation clause objection to the vast majority of admitted orders and rulings, and he does not show any "manifest" error regarding their use. RAP 2.5(a)(3). In those few instances where Fredric did raise a confrontation clause objection, the evidence was either not offered for the truth of the matter or the truth of the matter was so clearly established by other evidence that any possible confrontation error was harmless.

III.  *Fredric Cites No Authority for His Proposed Rule That the Clear Preponderance Standard of Proof Is Incompatible with Admission of Hearsay Evidence*

Fredric correctly asserts that the standard of proof in discipline hearings is higher than the standard of proof in civil cases. Attorney discipline requires proof by a "clear preponderance" of the evidence. ELC 10.14(b). That is "an intermediate standard of proof . . . requiring greater certainty than 'simple preponderance' but not to the extent required under 'beyond reasonable doubt.'" *In re Disciplinary Proceeding Against Allotta*, 109 Wn.2d 787, 792, 748 P.2d 628 (1988).

Fredric argues that the ELCs fail to enforce this heightened standard because they state that "evidence, including hearsay evidence, is admissible if in the

hearing officer's judgment it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their affairs." ELC 10.14(d)(1). According to Fredric, "[t]he standard of proof is thus LOWER than a civil case, because evidence that would never be admitted in a civil case over the objections of a defendant could comprise the entire case in a disciplinary action." Opening Br. on Appeal at 28. He asserts that this internal inconsistency in the ELCs is a structural error rendering the whole of the proceedings unsound and requiring reversal "without reference to any specific showing of prejudice." *Id.* at 29.

Not even confrontation clause errors are subject to this stringent review standard. They are reviewed under the constitutional harmless error standard, not the structural error standard. *Jasper*, 174 Wn.2d at 117. It necessarily follows that if hearsay evidence were admitted in error, it would be subject to the lower, nonconstitutional harmless error review standard—not the higher, structural error one. *See Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 452-53, 191 P.3d 879 (2008) (applying nonconstitutional harmless error standard to improper admission of hearsay evidence).

Further, this court has expressly held that admission of hearsay evidence in attorney discipline proceedings, as permitted by ELC 10.14(d)(1), satisfies due process clause requirements. *In re Disciplinary Proceeding Against Kronenberg*, 155 Wn.2d 184, 193, 117 P.3d 1134 (2005).[5] Fredric cites no authority showing

---

[5] *Accord Bang D. Nguyen v. Dep't of Health Med.*, 144 Wn.2d 516, 29 P.3d 689 (2001) (adopting clear and convincing standard for medical discipline hearing), *and* WAC 246-10-603 (permitting hearsay in medical discipline hearing under RCW 34.05.452).

that *Kronenberg* was incorrect or harmful, as he must do to overturn that precedent. *See Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147, 94 P.3d 930 (2004).

We note that a due process clause violation might arise if a discipline case were based inordinately on hearsay evidence. *Cf. Kronenberg*, 155 Wn.2d at 194. And Fredric complains about the "she[e]r volume of hearsay evidence" in this case. Reply Br. on Appeal at 21. But he cites only one specific example of objectionable hearsay from the record – a half-page declaration upon which the hearing officer relied, in part, to uphold a portion of a single finding.[6] Fredric thus fails to show that the hearsay in his case undermined the required standard of proof or caused prejudice.

*IV.    Fredric's Argument That He Is a Class of One Is Not Relevant*

Fredric argues that all the decisions in the cases discussed *supra*, pp. 2 to 17, were biased and incorrect. He concludes that Washington courts have illegally treated him as a "class of one" ever since he began litigating in this state. Opening Br. on Appeal at 36.

Fredric provides little argument in this section of his briefed. He does, however, opine that his lis pendens filings were proper, and some of the behavior for which Fredric is being disciplined relates to his lis pendens filings. But Fredric's arguments regarding the propriety of the lis pendens filings have been made in multiple courts and rejected multiple times. The hearing officer noted the

---

[6] Fredric also argues that admission of this piece of evidence violated his Sixth Amendment confrontation right. Fredric did not raise a confrontation objection to this evidence. As discussed above, Fredric does not show any manifest error, and we therefore will not consider his unpreserved confrontation clause argument. *See* RAP 2.5(a)(3).

previous rejection of these arguments. FF 211 (CP at 1331). Fredric cites no authority for his lis pendens claims, so we will not consider them further.

### V. The Hearing Officer Did Not Err in Quashing Fredric's Subpoenas to Judges

Fredric asserts that the hearing officer erred by quashing his subpoenas to various judges whose opinions and orders were admitted into evidence. He argues first that the hearing officer lacked the authority to quash the subpoenas. But a hearing officer clearly has the authority to deny a request for subpoenas during the discovery stage under ELC 10.11(d).[7] It would be illogical for the rules to silently strip the hearing officer of the authority to deny issuance of, or to quash, subpoenas issued during the hearing itself.

Fredric argues alternatively that because ELC 4.7 delegates authority for *enforcing* a subpoena to the superior court, only the superior court can *quash* a subpoena.[8] That conclusion, however, does not follow. Since that rule lists only delegation of the contempt power to the superior court, the rule of expressio unius compels just the opposite conclusion: that the only power regarding subpoenas the ELCs delegate to the superior court is the power of contempt – not the power to quash. Further, in *Sanai I* we reviewed the hearing officer's decision against issuing a subpoena for abuse of discretion. *Sanai* I, 167 Wn.2d at 752. It would be

---

[7] ELC 10.11(d) states in part, "The hearing officer may exercise discretion in imposing terms or limitations on the exercise of discovery to assure an expeditious, economical, and fair proceeding . . . ."

[8] ELC 4.7(a) states, "To enforce subpoenas issued under these rules, the Supreme Court delegates contempt authority to the Superior Courts as necessary for the Superior Courts to act under this rule."

incongruous to hold that the hearing officer's discretion to control subpoenas vanishes once the hearing has begun.

Fredric next argues that the hearing officer abused his discretion in quashing the subpoenas Fredric issued to judges. But evidence is not admissible unless it is relevant. ER 402. The subpoenaed judges' testimony was irrelevant. This is clear from Fredric's own concession. In his posthearing motion to reopen the disciplinary proceedings, Fredric stated that he wanted to cross-examine the judges so that they would "acknowledge that the new facts create doubt about the correctness of their rulings." CP at 1151. But the correctness of the judicial rulings in the cases upon which these proceedings are based is irrelevant to whether Fredric's actions violated RPC 3.1, RPC 3.2, RPC 3.4(c), RPC 4.4, RPC 8.4(a), RPC 8.4(d), RPC 8.4(j), RPC 8.4(l), and RPC 8.4(n). The hearing officer's decision to quash the subpoenas was not error.

Finally, Fredric argues that the appearance of fairness doctrine required the judges to testify. But the case Fredric cites for his appearance of fairness argument expressly states, "Because we decide this issue on the basis that oral cross examination of the county staff is required under [Pierce County Code] 2.36.090, we do not address the due process and appearance of fairness doctrine arguments." *Weyerhaeuser v. Pierce County*, 124 Wn.2d 26, 31-32, 873 P.2d 498 (1994). Fredric's arguments about the appearance of fairness are not persuasive.

### VI. *Fredric Does Not Show That the Hearing Officer Failed To Make Independent Findings*

Fredric asserts that the hearing officer's reliance on facts found by other judges, in their prior sanctions and other rulings, violated his rights. He argues that because the standard of proof in a civil action is lower than in a disciplinary hearing, findings of fact in a civil action cannot form the sole basis for establishing those facts at a disciplinary hearing. This is correct. *See In re Disciplinary Proceeding Against McGrath*, 174 Wn.2d 813, 825, 280 P.3d 1091 (2012). But the hearing officer did not just parrot prior judicial statements from underlying civil cases in making his findings. To the contrary, the record shows that the hearing officer made independent findings based on firsthand evidence every step of the way.

For example, the hearing officer found that "Fredric's repeated motions to impede[] the lot sale, and otherwise challenge every court ruling, were frivolous and brought to delay the proceedings and embarrass, burden and harass his father." FF 32 (CP at 1290). The officer based this finding not on any particular court ruling, but rather on the fact that Fredric had filed repeated motions over the course of a few months in the trial court, the Courts of Appeals, and the Supreme Court, all of which failed, and many of which resulted in sanctions—so that Fredric was on notice of their frivolous and sanctionable nature before refiling them. *See* FF 10-31 (CP at 1285-90). The hearing officer also considered Fredric's own testimony in making his determination and found that Fredric "was not credible." FF 14 (CP at 1286). In fact, over the course of the hearing, the hearing officer

heard 10 witnesses whose testimony resulted in 12 volumes and over 2,300 pages of transcripts. A close perusal of the record and findings shows that there was supporting evidence and independent findings regarding each count against Fredric. Fredric's general and unsupported claim that the hearing officer simply relied on the findings of the underlying courts fails.

VII.  *Fredric's Right to Notice of the Charges Was Not Violated, and His Other Arguments Are Meritless*

Fredric argues that new charges were added during the course of the disciplinary hearing in violation of *In re Ruffalo*, 390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968) (holding that lack of notice of charges in disciplinary proceedings violates the due process clause). But the hearing officer did not add new charges after the proceedings started. Instead, he found Fredric's behavior during the hearing constituted an aggravating factor. CL 215(e) (CP at 1332). This was permissible. In a disciplinary hearing, "[a]ggravating factors may be considered without being formally charged in the complaint." *In re Disciplinary Proceeding Against Burtch*, 162 Wn.2d 873, 889, 175 P.3d 1070 (2008).

Finally, Fredric states that he filed, in succession, a motion to the hearing officer for a supplemental hearing, a motion to reopen proceedings, a motion to amend the findings of fact and conclusions of law, and a motion to the Board for a supplemental hearing, which were all denied. Opening Br. on Appeal at 49-50. He does not make any argument as to why his motions should have been granted. *Id.*

## CONCLUSION

Fredric assigns error to about 180 findings of fact and conclusions of law. It is Fredric's burden to make persuasive arguments regarding each contested factual finding, with specific citations to the record. *Poole*, 164 Wn.2d at 724-25; *Kronenberg*, 155 Wn.2d at 191. Fredric fails to do this. In addition, his constitutional and evidentiary arguments are meritless.

The hearing officer recommended disbarment. CP at 1336. A unanimous Board adopted the recommendation. We will uphold a unanimous board decision in the absence of a clear reason for departure. *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 259, 66 P.3d 1057 (2003). Fredric has given none, nor have we found any. We uphold the recommendation of disbarment.

_____
George McCloud, J.

WE CONCUR:

_____
Madsen, C.J.

_____
J. M. Johnson, J.

_____
Owens, J.

_____
Fairhurst, J.

_____
Stephens, J.

_____
Wiggins, J.

_____
González, J.

_____
Hunt, J.P.T.